### EVANS, executrix, &c. *vs.* EVANS.

Upon the dissolution of a copartnership by the death of one of the copartners, the survivor is entitled to close up the affairs of the firm, and he will not be deprived of that right by the appointment of a receiver, if he is responsible and acts in good faith.

And the residence of the survivor in a foreign country, forms no ground of objection to his continuing to discharge the trust cast upon him by operation of law under the copartnership agreement, if he is perfectly responsible, and is closing up the affairs of the copartnership with reasonable diligence by a competent agent.

Upon the dissolution of a partnership by the death of one of the copartners, the representatives of the deceased member of the firm are entitled to have the stock on hand sold and converted into money, so that the share of the copartnership funds belonging to them may be realized without any unnecessary delay.

May 4. This was an appeal by the defendant from an order of the vice chancellor of the first circuit, appointing a receiver of the property and effects of a partnership which had been dissolved by the death of one of the copartners, and granting an injunction to restrain the survivor, or his agents, from interfering with the property and effects of

the firm. The business of the firm had been carried on at New-York by the deceased copartner and his uncle, the survivor; who furnished most of the capital of the firm and resided at Exeter in England. Upon the death of the acting copartner at New-York, the complainant, his widow and executrix, with the assistance of her father, assumed the management of the affairs of the concern until the arrival of the agent of the defendant; about two months afterwards. Horsey, the agent, who had been sent out from England to close up the affairs of the firm, upon his arrival found that the executrix had in her hands of the monies and bills receivable of the firm about $15,000. He being unable to obtain possession of that part of the partnership effects in any other manner, without litigation, agreed with her that if she would give up the monies and bills receivable then in her hands, he would allow her to appoint an agent to join with him in taking an account of the stock and effects of the firm, and making up a balance sheet by way of anticipation as to the final result; and if, upon stating such account, there should appear to be a balance due to the estate of the decedent, Horsey the agent would deposit in the hands of Anthon and Owen, if required, United States bank notes, and notes belonging to the firm, to the amount then in her hands; as a security to her for the amount which might ultimately be found due to the estate of her deceased husband. But this arrangement was made upon the condition that she should at once deliver up, and lodge in the hands of Anthon and Owen, the bills and monies in her hands; to be handed over to the defendant or his attorney upon his complying with the agreement on his part. Pursuant to this arrangement she delivered up to Anthon and Owen $11,920,65 in notes and United States Bank bills, and about $1500 in money, which funds were left by the agent in their hands pursuant to the agreement. Upon the statement of the account of the stock, &c. of the firm, as made by the complainant's agent, it appeared that if there should be no loss by bad debts, or otherwise, the estate of the decedent would be entitled to about $19,400; including

$1425 in money in the hands of the executrix which had not been paid over under the agreement. The correctness of such statement, however, was denied by the affidavits on the part of the defendant.

*E. H. Owen,* for the appellant.

*John Anthon,* for the respondent.

THE CHANCELLOR. Laying the agreement between the parties in this case, made by their respective agents, entirely out of the question, I can see nothing in the situation of the parties, or of the property of the firm, to authorize this court to interfere, by the appointment of a receiver, to deprive the surviving copartner of the right to close up the concerns of the firm in the usual way. It appears to be a well settled principle of commercial law that upon the dissolution of the firm, by the death of one of the copartners, the survivor is entitled to close up the affairs of the concern ; and that this court will not appoint a receiver and deprive him of that right if he is responsible and acts in good faith. (*Cary on Part.* 292. *Gow,* 3 *Lond. ed.* 356.) Here there is no pretence that the defendant is not perfectly responsible ; and the affidavits show that he is engaged in closing up the affairs of the firm, by a competent agent, with all reasonable diligence. The fact of his residing in England, therefore, is no objection to his continuing to discharge the trust which has been cast upon him by operation of law under the copartnership agreement.

Again ; I am satisfied that the agreement made by Horsey, the agent, has been substantially complied with on the part of the defendant. Even if the account as stated by Fellows is perfectly correct, it does not follow that the complainant will be entitled to the whole $19,400 apparently due. The agreement itself shows that the object of the statement was not to make a final settlement ; but to obtain a mere hypothetical computation of the apparent profits of the firm, for the purpose of seeing whether any

part of the assets delivered up by the executrix should be placed or left in the hands of the attorneys for both parties, as a security for the amount which might eventually be found due after the debts were collected and the stock converted into cash. It appears by the statement annexed to the complainant's bill, that the book debts and bills receivable were more than $35,000. And no one who has any knowledge of business as it has been transacted in the city of New-York since 1836, when the last settlement previous to the death of the junior partner appears to have been made, can suppose that the whole of that amount will be collected without loss.

It is not necessary in this stage of the suit to inquire whether the complainant has performed the agreement in good faith on her part, or whether she has retained a part of the cash which she agreed to pay over to Anthon and Owen for the use of the defendant. If the whole fund in her hands has been paid over, the defendant's agent has left an equal sum in their hands, for the security of the balance which may eventually be found due to her ; which is all he was required to do under the agreement.

In case either party desires it, the cash funds which are lying unproductive in the bank may be invested in the trust company, to accumulate, until the account of the partnership can be taken and closed up. And the executrix, if she deems it for her interest, has a right to insist that the stock on hand shall at once be sold for cash ; so that the remaining debts of the firm may be paid off and the business brought to a close as soon as possible. The vice chancellor, upon a proper application, will of course make the proper orders for that purpose. But I see no reason whatever for charging the property with the expenses of a receivership, or of taking the business out of the hands of a competent agent for whose acts the defendant is responsible to the complainant.

The order appealed from must, therefore, be reversed, and the application for an injunction and receiver denied.

The costs of the defendant upon the appeal, and upon the original application, to abide the event of the suit; and the proceedings to be remitted to the vice chancellor.