# Cases

# THIRD DEPARTMENT,

AT

# GENERAL TERM.

## January, 1883.

---

WILLIAM OGDEN, as Receiver, etc., of WILLIAM H. GREGG & CO., Respondent, v. STEPHEN T. ARNOT, Appellant.

*Partnership — is dissolved by an insolvent partner making a general assignment — the solvent partner may close up the business and give a chattel mortgage to a firm creditor — temporary receiver of firm assets — powers of — the insolvent partner should, together with his assignee, be made a party to an action to wind up the firm.*

Where one of the members of a firm becomes insolvent and makes a general assignment of all his property for the payment of his debts, the partnership is thereby dissolved and the solvent partner has the right to manage and close up the business.

In so closing up the business he may execute, in the firm name, a chattel mortgage upon all the stock of goods of the firm and the fixtures in the store, to a creditor of the firm to secure the payment to him, within three months, of an amount due to him for money loaned and goods sold to the firm.

A temporary receiver of the firm property, appointed in an action brought by the solvent partner to have the firm dissolved and its affairs settled, has not such a title to the firm assets as will authorize him to bring an action against a creditor, to whom a chattel mortgage has been so given, to recover the goods he has taken by virtue of it.

The insolvent partner as well as his assignee should be made parties to an action brought to procure a dissolution of the firm and a settlement of its accounts.

Appeal from a judgment in favor of the plaintiff, entered upon the report of a referee.

The firm of William H. Gregg & Co. was composed of William H. Gregg, who conducted the business, and Henry W. Beadle, who was a private banker. On the 22d of March, 1878, Beadle, being insolvent, made an assignment of all his property of every nature to Hall & Gillett, in trust for the payment of his debts. His individual property was insufficient to pay his individual debts.

On the 26th of March, 1878, William H. Gregg, in the firm name, executed a chattel mortgage to the defendant Arnot, upon all the stock of goods of the firm and the fixtures in their store, to secure $8,070.61 and interest within three months, the mortgage containing a covenant to pay that sum at that time. This sum was for money loaned to the firm and for goods sold to it. The firm was then indebted to persons other than Arnot.

The inventory and schedule of the assignees were filed about April 21, 1878, and do not include the interest of Beadle in the said firm.

In April, 1878, Gregg commenced an action against Hall & Gillett, assignees, alleging the partnership aforesaid, and the assignment by Beadle to them, and asking a dissolution of the partnership, the taking of an account, and the appointment of a receiver. Hall & Gillett, assignees, appeared, and by consent of parties, without making Beadle a party, an order was entered May 11, 1878, appointing the present plaintiff, Ogden, receiver of the partnership property of the firm, with the usual powers.

On the 16th of April, 1878, Arnot had taken possession of certain whisky belonging to said firm, by virtue of his chattel mortgage, and had sold the same.

On the 12th of May, 1878, the Receiver took possession of the stock other than the whisky, and while he was inventorying it on the 22d of May, 1878, Arnot took the same under his chattel mortgage and sold it. Thereupon the plaintiff Ogden, the Receiver, in September, 1878, commenced this action against Arnot, Hall & Gillett, asking for relief of various kinds, but substantially seeking to recover for the property taken by Arnot under his chattel mortgage.

Subsequently, on the 10th of January, 1881, upon a stipulation of Beadle appearing by attorney, and on motion of Ogden, the Receiver, without, so far as appears, any consent of Gregg, the plain-

tiff in the action, an order was made in the action brought by Gregg against Hall & Gillett, assignees, making Beadle a party defendant therein, and amending the summons and complaint by naming him as a party defendant and amending the order appointing the receiver by adding Beadle's name as defendant.

Thereafter, on the 10th of May, 1881, the referee, before whom the present action was tried, reported in favor of the plaintiff Ogden against Arnot for $3,437.16 and interest, the value of the stock (not the whisky) taken by Arnot. On such report judgment was entered and the defendant Arnot appeals.

*J. McGuire,* for the appellant.

*Erastus P. Hart,* for the respondent.

LEARNED, P. J.:

It is not necessary to consider the transaction on which the debts to Arnot arose. Because it is plain that they were valid debts, owing by the firm to him. Nor is it of any consequence that the mortgage was not recorded.

The assignment by Beadle is in terms broad enough to convey all his property. This did not transfer the *corpus* of the partnership property; but only his share of what would remain after the debts were paid. (*Menagh* v. *Whitwell,* 52 N. Y., 146, at 158.) It does not appear by the appeal papers whether the trust was for the payment of individual debts, or of all his debts. But that is of little moment, under the principle just cited. (See, in this connection, *Wilson* v. *Robertson,* 21 N. Y., 587.)

It does not seem to be disputed, by either party to this controversy, that the act of Beadle in assigning his whole property, including therefore whatever might belong to him in the partnership, worked a dissolution of the partnership. This must be so; because one partner cannot, against the will of the other, introduce a new member into the partnership. (*Marquand* v. *New York Manf. Co.,* 17 Johns., 525; Story on Part., § 307, etc.)

Where there is a voluntary dissolution and no agreement as to the settling of the partnership business, it is plain that one partner has the same power as the other in that respect. But where, as in this case, one partner has broken up the partnership by his assign-

ment in insolvency, it is plain that he has not the right to manage the closing up of the business. That right belongs to the other party : subject of course to the control of the court, if the right is abused. (Story Part., 341.) Gregg therefore had the right to go on with the closing up of the business. It would be most unreasonable, if the insolvent partner should, by his insolvency, deprive the solvent partner of the power of closing up the partnership, for the payment of the debts of which he is liable. (*Evans* v. *Evans*, 9 Paige, 178; *Robbins* v. *Fuller*, 24 N. Y., 570; *Van Doren* v. *Horton*, 19 Hun, 7.)

The power to close up the business of the partnership includes necessarily the power to sell the partnership property, to collect the partnership accounts, and to pay the partnership debts. Certainly, then, Gregg could have sold Arnot the stock of goods and the whisky ; could have received the price, and with the price could have paid any partnership debt. The general principle, except as it may be modified by a bankrupt law, is that a debtor may pay one creditor before he pays another ; even that he may pay one creditor to the exclusion of another. And it seems to be settled by decisions that, on the dissolution of the partnership by the death of one partner, or by his insolvent assignment, the remaining partner may exercise that same preference of one partnership creditor over the other. (*Egberts* v. *Wood*, 3 Paige, 517; *Loeschigk* v. *Addison*, 4 Abb. Pr. [N. S.], 210.) Certainly that must be so, unless the partnership be insolvent; and such insolvency is not shown in this case. If, then, the remaining partner, after such a dissolution, may sell the partnership property, and may apply the avails to such partnership debt as he chooses, it follows that he may directly apply the partnership property to the payment of a partnership debt. The equitable right which the insolvent partner has, or which the representatives of a deceased partner have, is that the partnership property be applied to the payment of partnership debts. That is all; and that right is not infringed by the turning out of partnership property to pay a partnership debt.

In this present case, however, Gregg mortgaged the partnership property to Arnot. Now Gregg had the legal title to the property. He could sell, and convey and transfer. Why could he not mortgage? Of course a mortgage for his individual and antecedent

debt might be invalid; because it would be paying his own debt out of partnership property for no new consideration. But I do not see why he may not mortgage partnership property for a partnership debt. The learned referee argues that he cannot mortgage, because he cannot create, or renew, a partnership obligation. For, he says, the partner thus impairs the right of creditors to payment of their debts without delay. But when any debtor mortgages his property to secure a just debt, does he impair the right of other creditors to the payment of their just debts without delay? Of course a creditor may be unable to collect his debt out of mortgaged property, and yet it is lawful for a debtor to mortgage his property for a valid debt, and to make the mortgage payable at a future time. We must remember that this debt to Arnot was a debt of the solvent Gregg, just as much as it was a debt of the insolvent Beadle. All that Beadle could claim — all that the creditors of the partnership could claim — was that Gregg should use the partnership property to discharge the partnership debts, and not to discharge his individual debts. That he has done.

But it is said that Gregg signed the firm name, and that the mortgage contained a covenant for pay. When Beadle is sued on that covenant, the dissolution of the partnership will be a good defense to the action. But the mortgage is good enough as a transfer of the property, and probably the covenant to pay is binding on Gregg.

I think it not accurate to say, in the language of the learned referee, that on the dissolution Gregg immediately became the trustee of the firm property for the benefit of the firm creditors, or for Beadle and his assignees. He was not a trustee, but was the owner of the property. Only in paying from its avails the debts which he himself owed, it was his duty first to pay those which he owed as partner with Beadle. When we speak of a man as trustee, who is not strictly a trustee, we are often lead into deductions from the word which may be erroneous. (Pars. on Part., 345.)

It is further argued by the defendant that the plaintiff has no right to bring this action, being merely a receiver *pendente lite* in an action to dissolve a partnership. Such seems to be the principle decided in *Fincke* v. *Funke* (32 Sup. Ct. [25 Hun], 616). *Keeney* v. *Home Insurance Company* (71 N. Y., 396) decides that such a receiver acquires no title to the property; *Foster* v. *Towns-*

hend (68 N. Y., 206), that he can only bring or defend suits by permission and direct authority of the court. (See the other authorities in the case first cited.)

The plaintiff insists, however, on the provisions of chapter 314, Laws 1858, authorizing executors, etc., to disaffirm acts in fraud of creditors. That act speaks of an "estate or property so held in trust." Under the decisions last cited such a receiver as the plaintiff does not hold any estate or property; the court saying that the title remains in those in whom it was vested when the appointment was made. (*Keeney* v. *Home Insurance Company, ut supra.*) Nor are we satisfied that the payment of a valid debt can ever be said to be in fraud of other creditors of the debtor, except perhaps under a bankrupt law. There is another question, and that relates to the order made January 10, 1881. We do not know what authority the receiver had to make a motion of that kind; and certainly no such motion could properly be entertained without notice to the plaintiff in the action.

But it may be that the original order appointing the receiver was valid, although Beadle was not a party to the action. There is no doubt, however, that he ought to have been made a party originally.

The judgment must be reversed, new trial granted, referee discharged, costs to abide event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

So ordered.