CALEY, Trustee in bankruptcy, Respondent, vs. WEYER-
HAEUSER STATE BANK, Appellant.

*February 11—March 10, 1925.*

*Judgment: Res adjudicata: Issues actually or constructively liti-
gated: Bankruptcy: Unlawful preference: Knowledge of
debtor's insolvency.*

1. In order to constitute a former judgment *res adjudicata* in a
   subsequent action, the issues made by the pleadings in the
   former action must be substantially the same as the issues
   in the latter touching the matters claimed to be *res adjudi-
   cata.* p. 378.
2. The rule that one judgment bars another action does not extend
   to matters which might have been litigated under issues
   formed by additional pleadings. p. 379.
3. In an action by a trustee in bankruptcy to set aside a mortgage
   given by the bankrupt to a bank as an unlawful preference,
   the evidence is *held* to sustain a finding that the mortgagee
   knew of the mortgagor's insolvency at the time it acquired its
   mortgage. p. 380.

APPEAL from an order and a judgment of the circuit
court for Rusk county: E. C. HIGBEE, Judge. *Affirmed.*

Action brought by the plaintiff, a trustee in bankruptcy
of one David Gobeli, a bankrupt, to set aside the mortgage
of the defendant on the ground that it constituted an un-
lawful preference.

Gobeli had been running a creamery and became heavily
indebted. In order to enable him to continue business he had
covered his real estate with the following mortgages: (1) A
mortgage dated January 16, 1918, to Johan Ruefner for
$3,000. This mortgage was first in time of execution but
was the last to be recorded. It was recorded June 7, 1921.
(2) A mortgage dated April 26, 1920, to O. J. Falge and
F. M. Doyle for $3,000. Recorded May 6, 1920, and after-
wards assigned to Anton Winzig. This was the first mort-
gage to be recorded. (3) A mortgage dated February 19,
1921, to the defendant *Weyerhaeuser State Bank* for $5,000,

to secure the payment of a note of $5,000 executed at the
same time. This mortgage was recorded May 9, 1921; and
a deed given upon the same premises as the mortgage, and
intended as security for the payment of the money due the
bank, was recorded May 7, 1921. The trial court found
that while the mortgage and deed were dated February 19,
1921, respectively, they were made, executed, and delivered
on the 6th day of May, 1921. In June, 1921, Ruefner began
an action to foreclose his mortgage wherein the defendant
and Winzig were made parties. After the action was
started the plaintiff herein was also made a party to the ac-
tion, but he filed no pleadings and did not in any manner con-
test the action. Upon the trial of that foreclosure action it
was determined that Ruefner's mortgage was subordinate to
the mortgage of the defendant because it was recorded after
defendant's mortgage was recorded and because the defend-
ant had no notice of the execution thereof. It is claimed
on behalf of the appellant herein that since in that fore-
closure action the plaintiff did not contest the validity of de-
fendant's mortgage he is barred from now contesting it.
The trial court found the facts as follows:

"(1) That on January 14, 1920, and for some years
prior thereto, one David Gobeli operated a cheese factory
approximately seven miles from Bruce, Wisconsin, and
eleven miles from Weyerhaeuser, Wisconsin. That up to
that time his banking business was done with the State Bank
of Bruce, at Bruce, Wisconsin, and that on that day he was
indebted to said bank in the sum of $1,000. That on Jan-
uary 14, 1920, he transferred his banking business from the
State Bank of Bruce to the *Weyerhaeuser State Bank* at
Weyerhaeuser, Wisconsin, and on that date obtained a loan
of $1,500 from said bank, which said $1,500 was placed to
the credit of David Gobeli on the books of the bank, to-
gether with an additional deposit of $25.16. That he drew
checks against said credit payable to patrons of his cheese
factory for milk and to merchants in Weyerhaeuser for
supplies. That on January 14, 1921, when said loan of

$1,500 became due, said Gobeli was unable to pay the same or the interest thereon, and on said date renewed said loan by giving a note for the sum of $1,605, due January 14, 1922. That from March 19, 1920, up to the time of the filing of the petition in bankruptcy by the said David Gobeli in May, 1921, said banking account was overdrawn a greater portion of the time, such overdrafts ranging all the way from $40.80 on March 19, 1920, to $2,507.53 on March 26, 1921. That on the 9th day of September, 1920, said David Gobeli settled an overdraft by making, executing, and delivering to said bank a note for $1,956.39, due March 9, 1921. That on September 6, 1920, he also executed and delivered a note to said bank—a note for the sum of $200, due June 6, 1921. That on February 19, 1921, said David Gobeli was indebted to said bank, in addition to the aforementioned notes, on overdraft in the sum of $1,764.06. That on said date said David Gobeli was also indebted to one John Ruefner on a note for $3,500 which was secured by mortgage upon the real estate mentioned and described in the complaint, and was also indebted to one Anton Winzig on a note for $3,000 and accumulated interest thereon, which said note was also secured by mortgage upon said real estate. That in addition to the indebtedness aforementioned said David Gobeli was indebted to the Bank of Barron in the amount of $800, and in a large amount to merchants from whom he had purchased supplies.

"(2) That on said 19th day of February, 1921, said David Gobeli was possessed of the eighty acres of land aforesaid, on which was located his cheese factory. That the value of said real estate did not exceed the sum of $8,000, and that the value of the personal property owned by said David Gobeli did not exceed the sum of $1,500.

"(3) That the indebtedness of said David Gobeli to said Anton Winzig and to the patrons of the cheese factory and to merchants who were located in the vicinity of the cheese factory was known to the officers of the *Weyerhaeuser State Bank* at said time. That said officers did not know of the existence of the Ruefner mortgage. That the officers of said *Weyerhaeuser State Bank,* from February 19, 1921, to May 6, 1921, knew and had good reason to believe that the said David Gobeli was insolvent and that he had not sufficient property and assets to meet his liabilities, and

knew he was not able to meet and pay his debts in the ordinary course of business.

"(4) That the note for $5,000 made and executed by the said David Gobeli to the said *Weyerhaeuser State Bank* and dated February 19, 1921, was in fact made, executed, and delivered on the 6th day of May, 1921, and the consideration therefor was the said note of $1,605 due January 14, 1922, the note of $1,956 due March 9, 1921, a note of $200 due June 6, 1921, and interest thereon to said date, and an over-draft of his checking account.

"(5) That after giving credit to said David Gobeli upon said notes and overdraft for said sum of $5,000 there still remained an indebtedness for overdraft due said bank."

As conclusions of law the court found:

"(1) That the giving of the mortgage and deed to the *Weyerhaeuser State Bank* dated February 19, 1921, consti-tuted a preference in favor of the *Weyerhaeuser State Bank* as against the other creditors of the said David Gobeli.

"(2) That the mortgage and deed are void.

"(3) That the same be canceled and set aside and dis-charged of record.

"(4) That a certified copy of the judgment adjudging the invalidity and cancellation of said note and mortgage be recorded in the office of the register of deeds for Rusk county, and that the same shall have the effect to cancel and satisfy said mortgage of record and cancel and set aside said deed."

The trial court overruled the defendant's plea in bar, and from the order overruling such plea and the judgment en-tered upon the findings and conclusions of law the defendant appealed.

*Charles Kirwan* of Ladysmith, for the appellant.

For the respondent there was a brief by *H. F. Duckart* of Bruce and *Falge & Stine* of Ladysmith, attorneys, and *J. H. Schnorenberg* of Hartford, of counsel, and oral argu-ment by *Mr. Schnorenberg*.

VINJE, C. J.  The appeal presents two questions: (1) Did the trial court err in overruling the plea in bar? and (2) Did

it err in finding that the defendant knew of the insolvency of Gobeli at the time it acquired its mortgage?

The rule is almost of universal application that, in order to constitute a former judgment *res judicata* in a subsequent action, the issues made by the pleadings in the former action must be substantially the same as the issues made in the latter action touching the matters claimed to be *res judicata*. *Rowell v. Smith*, 123 Wis. 510 (102 N. W. 1) and cases cited on p. 516; *Rahr v. Wittmann*, 147 Wis. 195, 132 N. W. 1107; *Estate of Ryan*, 157 Wis. 576, 147 N. W. 993.

In the foreclosure action the plaintiff in this action did not appear though made a party. Hence he presented no issue in that case to be tried. The foreclosure of a valid mortgage constituted the cause of action in that case and the only issues presented were the priorities of the several mortgages. The plaintiff here presented no issue in that case and the validity of defendant's mortgage as to any attack upon it by the plaintiff was not in issue. Plaintiff has not had his day in court upon that issue. He might perhaps have raised the issue in the foreclosure action by a cross-complaint, but he was not compelled to do so and did not do so. As was said in *Estate of Ryan*, 157 Wis. 576, at p. 578 (147 N. W. 993):

"No issue of this kind was raised or tried in that case, and when it is claimed that the judgment in one case determines the rights of the parties in another case upon a different cause of action, it must appear that the questions were actually litigated and decided in the former case."

If the judgment in the former case does not actually decide the matters claimed to be *res judicata*, the question whether the issues as made up by the pleadings necessarily called for an adjudication thereon must be determined. If they did, then the judgment may constructively be held to have adjudged the matter; but if they did not, then the former judgment is not *res judicata*. Here we have a dif-

ferent cause of action than in the former case, and no plead-
ings in the former action requiring any adjudication upon
the issue now presented.   In such case there is no bar to
the maintenance of the pending action on the ground of
*res judicata.*   The rule as to when one judgment bars an-
other action is thus stated in 15 Ruling Case Law, 964: "It
does not extend to matters which have been litigated under
issues formed by additional pleadings."   We therefore come
to the conclusion that the trial court properly overruled the
plea in bar.

    There is evidence to sustain the finding that the mortgage
and deed were executed May 6th instead of February 19th.
The bankrupt testified to that effect and so did his wife.
She recalls that it was May 6th because the transaction took
place just about the time of her birthday.   Whether it was
made in February or May is not very material, because in
any event it was made within four months of the bank-
ruptcy.   The fact, however, that it was made in May and
not in February is a significant circumstance, which, to-
gether with the other testimony, warrants the court in find-
ing that the defendant had notice of the insolvency of
Gobeli.   The evidence shows quite conclusively that the real
value of the estate of the bankrupt in February and from
then on till May did not exceed $8,000 in real estate and
$1,500 in personal property.   At the time of the execution
of the mortgage the defendant knew of the existence of the
Ruefner mortgage for $3,500; of the debt of $1,000 to the
Bank of Bruce; of the Winzig mortgage amounting to
$3,000, and of smaller debts aggregating about $1,000.
These debts added to the debt to the bank of $5,000 made
an amount considerably in excess of the assets of the bank-
rupt.   Gobeli also testified that at the time the mortgage
was executed he told the cashier of the defendant bank that
he was pretty much in debt and in bad shape.   After this
note and mortgage were executed there still remained an
overdraft of $200 in the defendant bank.   From this evi-

dence the trial court is justified in reaching the conclusion that the defendant had reasonable grounds to believe that Gobeli was insolvent.   Indeed, the evidence is so conclusive that it can be said that the bank must have known such fact at the time the mortgage was executed.   The case comes well within the facts and rule of law stated in *Roys v. First Nat. Bank,* 183 Wis. 10, 197 N. W. 237.

*By the Court.*—Judgment and order affirmed.